39 F.3d 1181
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nathan Vernon GILLENWATER, Petitioner-Appellant,
v.
Al C. PARKE, Warden, Respondent-Appellee.
 No. 93-6567.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1994.
 
 Before: GUY and BATCHELDER, Circuit Judges; and McCALLA, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner, Nathan Gillenwater, appeals from the denial of his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. Our review of the record below convinces us that no error occurred, and accordingly we affirm the denial of the writ.
 
 I.
 
 2
 In 1980, petitioner entered a plea of guilty to one count of murder in a Kentucky state court. He was sentenced to a term of life imprisonment. Shortly after being incarcerated, petitioner filed a motion to vacate his sentence. That motion was denied, and no further action was taken until 1987 when petitioner filed a second motion to vacate. This motion was summarily denied as being successive, and an appeal was taken to the intermediate court of appeals in Kentucky. The court of appeals summarily affirmed on procedural grounds. The Kentucky Supreme Court denied discretionary review.
 
 
 3
 On March 21, 1989, Gillenwater filed a petition for federal habeas relief. The district judge referred the petition to a magistrate judge for a report and recommendation, and the magistrate judge recommended that the petition be dismissed because petitioner had failed to show cause for his procedural default in state court. The magistrate judge also concluded that no actual prejudice flowed from the procedural default and that the decision in the case was not a fundamental miscarriage of justice. The district court adopted the magistrate judge's report and recommendation. Petitioner appealed, and we reversed and remanded, holding that the district judge had erred in utilizing a cause and prejudice analysis. Our rationale was that the Kentucky Supreme Court, in denying discretionary review, had not expressly based its ruling upon procedural default.
 
 
 4
 Respondent sought and was granted certiorari by the United States Supreme Court, and our decision was vacated in light of the Supreme Court's decision in Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991). Ylst, as applied to the facts in this case, resulted in the creation of a rebuttable presumption that the Kentucky courts had in fact denied petitioner's second motion to vacate on procedural grounds. When the case was remanded to the district court, petitioner was ordered to show cause why his petition should not be dismissed. Gillenwater then filed a supplemental brief in which he conceded that he could not rebut the Ylst presumption of procedural default, but argued that the court's initial conclusion that he had failed to show cause for his default was erroneous.
 
 
 5
 Once again this matter was referred to a magistrate judge, and once again the magistrate judge recommended dismissal. The district judge declined to adopt the magistrate judge's report and recommendation, however, because he found that there was a factual dispute that only could be resolved after an evidentiary hearing. The matter was then recommitted to the magistrate judge for further consideration.
 
 
 6
 The factual issue for resolution was simple and straightforward. Petitioner's first state motion to vacate his sentence was denied on March 7, 1981. Petitioner claims he never received a copy of the order denying his motion to vacate, and that is why in September of 1987 he filed his second motion. Both sides concede that, if in fact petitioner had never received a copy of the order of dismissal, the cause requirement would have been met, thereby excusing petitioner's failure to timely pursue his state appellate remedies.
 
 
 7
 In order to resolve this issue, the magistrate judge held two hearings. Gillenwater testified that he did not receive a copy of the order dismissing his motion to vacate. Roy T. Gee, the Carter Circuit Court Clerk, testified as to the standard procedure in the clerk's office for the receipt, filing, and entry of orders as well as mailing notices to the parties and counsel.
 
 
 8
 Melinda Sewell, the Carter Circuit Court Deputy Clerk for the relevant time period, also testified. She stated that the Carter Circuit Court order denying petitioner's motion to vacate included a certification of service on petitioner on the bottom of the order. Sewell also testified that it was the routine procedure in the office to mail out copies of orders on a daily basis by taking them to the Post Office with postage affixed.
 
 
 9
 In addition to his own testimony, Gillenwater also introduced into evidence a copy of the court's docket sheet, which he had requested and received in 1987 prior to filing his second motion to vacate. The docket sheet received by Gillenwater does not reflect the order denying his 1981 motion. Additionally, and of some significance, however, the docket sheet also does not reflect the filing of his motion or any responses thereto. The docket sheet simply stops as of the date of April 4, 1980, the date of the filing of petitioner's guilty plea agreement.
 
 
 10
 Melinda Sewell also testified that in connection with petitioner's appeal of the denial of his second motion to vacate, she reconstructed a docket sheet without difficulty by reference to the original documents in the court files. This docket sheet, which was the one forwarded to the court of appeals, contained all of the entries relative to the filing and subsequent denial of petitioner's first motion to vacate.
 
 
 11
 In his resolution of this factual issue, the magistrate judge also took into consideration the fact that Gillenwater also denied he had ever received a copy of the state's response to his 1981 motion, nor did he remember filing a reply to that response. Both of these documents are of record and in the court file, however.
 
 
 12
 The magistrate judge, after the second hearing, concluded that the petitioner did in fact receive a copy of the 1981 order denying his first motion to vacate, and thus concluded that petitioner had failed to show cause for his procedural default.
 
 
 13
 The magistrate judge then went on to consider whether petitioner could show that any prejudice resulted from the failure of the state courts to review the merits of his claims. Although the magistrate judge indicated that this analysis was unnecessary in light of his finding on the issue of "cause," he nonetheless concluded that no prejudice enured to Gillenwater, since none of his substantive claims had any merit.
 
 
 14
 Over the petitioner's objections, the district judge adopted the magistrate judge's report and recommendation and denied the petition for habeas relief.
 
 II.
 
 15
 In reviewing a denial of a habeas petition, we review factual findings made by the district court under a clearly erroneous standard. Levine v. Torvik, 986 F.2d 1506, 1512 (6th Cir.1993). Since there was an evidentiary hearing held in this case, another way of stating our standard of review is to ask whether any reasonable factfinder could have concluded that Gillenwater did in fact receive a copy of the order denying his first motion to vacate. There can be little doubt that the factfinder permissibly could conclude as he did, given the nature of the testimony presented in the evidentiary hearings.
 
 
 16
 There is no doubt Gillenwater vigorously denied receiving a copy of the order. The persuasive impact of this denial, however, is diluted by the fact that petitioner also cannot remember receiving the state's response to his motion and, even more critically, cannot remember filing his own reply to the state's response. We also note in this regard, although the district court did not allude to it, that petitioner waited six years before he filed a second petition. No explanation is offered for why Gillenwater would not have inquired into the status of his first motion some time prior to the expiration of six years.
 
 
 17
 The district court also had before it copies of the court's order, carrying on their face a certificate of service upon Gillenwater. These documents have to be viewed against the backdrop of the testimony of the county clerk and deputy county clerk as to the routine practice followed in the clerk's office, and there was no credible evidence of any deviation from the routine practice in this case.
 
 
 18
 Although the fact that in 1987 petitioner was sent a copy of a docket sheet that did not reflect the entry of the order dismissing his motion to vacate is disturbing, the weight to be attached to this omission is lessened by the fact that the docket sheet does not show the filing of any post-conviction documents, including two documents filed by the petitioner himself. Thus, a factfinder logically could conclude that for some unexplained reason no entries were posted on this docket sheet after petitioner's plea was taken. The docket sheet received by the petitioner would be stronger evidence in his favor if it had referenced all of the post-conviction filings except the order denying the motion to dismiss.
 
 
 19
 To some degree at least, a credibility determination was involved here. It is not so much a case of someone telling the truth as opposed to someone else intentionally falsifying, but rather it is a case of which scenario is most believable. We cannot say that the district court erred in concluding that the the order was mailed out in due course and received by the petitioner.
 
 
 20
 This really ends our inquiry. In 1991, the United States Supreme Court decided McCleskey v. Zant, 499 U.S. 467 (1991). McCleskey pulled together some of the Court's conflicting prior opinions relating to how successive petitions for post-conviction relief should be analyzed. The Court concluded that the "cause and prejudice" analysis set forth in Wainwright v. Sykes, 433 U.S. 72 (1977), was the appropriate standard to apply. Although this is not an abuse of the writ case as was McCleskey, the language from McCleskey is nonetheless relevant, since by its holding in McCleskey the Court adopted the same standard for review in abuse of the writ cases as is used in review of state procedural default cases.
 
 
 21
 In McCleskey, the Court reiterated what it had said earlier in Murray v. Carrier, 477 U.S. 478 (1986), to the effect there was no necessity to consider whether a petitioner was prejudiced if he could not show cause for his procedural default. The decision in Murray clearly rejected the proposition that the showing of prejudice would permit relief in the absence of a showing of cause.
 
 
 22
 We make reference to the issue of prejudice because petitioner has argued in this appeal that the magistrate judge erred in his analysis of the prejudice issue and that his method of analysis is contrary to that set forth in Maupin v. Smith, 785 F.2d 135, 139 (6th Cir.1986) (In analyzing a petitioner's contention of prejudice, the court should assume the petitioner has stated a meritorious constitutional claim.).[1] Although it is unnecessary to decide whether error was committed in connection with the prejudice analysis, we would note that another interpretation could be placed upon what the magistrate judge did in this portion of his opinion. In McCleskey, the Court stated that no consideration of prejudice would be made because there was a failure to show cause. The Court did, however, go on to address the issue of whether it should exercise its equitable discretion to correct a miscarriage of justice. In that regard, the Court looked, as did the magistrate judge in this case, to the merits of petitioner's claims to make sure that the alleged violations did not result in teh conviction of an innocent person regardless of what procedural irregularities may be involved. In McCleskey, the Court concluded there was no miscarriage of justice; the magistrate judge concluded to the same efect in this case. We agree.
 
 
 23
 Since petitioner has failed to show cause for his procedural default in the state court, and becaue there has been no demonstration that he is innocent, the decision of the district court denying the writ of habeas corpus is AFFIRMED.
 
 
 
 *
 Honorable Jon P. McCalla, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Since it is not necessary for us to make a prejudice analysis in this case, we find it inappropriate to engage in a further discussion of our decision in Maupin. However, we do note that Maupin was decided without the benefit of the Supreme Court's subseqiemt decisions in Murray v. Carrier and McCleskey v. Zant, and whether our statement in Maupin as to presuming the validity of the constitutional claim is still good law is open to question. No other circuit has cited Maupin for this proposition since it was decided in 1986