NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0799n.06

No. 14-4043

**FILED**
Dec 08, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

LAVELLE JONES, )
)
   Petitioner-Appellant, )
)
            v. )
)
WARDEN, LEBANON CORRECTIONAL )
INSTITUTION, )
)
   Respondent-Appellee. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE: GRIFFIN and KETHLEDGE, Circuit Judges; and CLELAND, District Judge.[*]

GRIFFIN, Circuit Judge.

Petitioner Lavelle Jones seeks a writ of habeas corpus, contending that he was denied his right to the effective assistance of counsel in connection with his decision to plead guilty to first-degree kidnapping in an Ohio state court. The district court dismissed the petition for failure to establish that the state appellate court's determination of petitioner's claim was an unreasonable application of federal law. We agree and affirm.

I.

Petitioner robbed a tanning salon with a BB-gun. *State v. Jones*, No. 09AP-700, 2010 WL 866126, at *1 (Ohio Ct. App. Mar. 11, 2010). Police arrested him not long after, and the State of Ohio charged him with first-degree kidnapping and second- and third-degree robbery,

---

[*]The Honorable Robert H. Cleland, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

each with a "repeat violent offender" specification. *Id.* at *1. Defendant pleaded guilty to the

charges. *Id.* at *1. According to the Ohio Court of Appeals, at the plea hearing,

> [a]fter the state recited the facts of the case, the trial court stated it had a
> "problem" with the kidnapping charge because the facts indicated that the victim
> was released without being harmed, which would reduce the kidnapping offense
> to a second-degree felony pursuant to R.C. 2905.01(C)(1). The prosecutor
> countered that the "safe place unharmed" issue was an affirmative defense to be
> raised at trial and also argued that the victim had suffered psychological harm.
> The court responded that, while appellant could waive the affirmative defense and
> plead guilty, the evidence simply did not show the necessary "elements" for a
> first-degree felony kidnapping offense, and the court did not believe
> psychological harm constituted harm. The state indicated it would proceed with
> the kidnapping offense being a first-degree felony. Appellant's counsel
> responded he did not feel he could take the current case to trial because another
> case against appellant was outstanding. The trial court responded it still had a
> problem with the kidnapping charge because the state did not meet its burden, and
> the court indicated it would never find the offense to be a first-degree felony.
> However, the trial court accepted the guilty plea, but allowed briefing on the "safe
> place unharmed" issue, stating that, if psychological harm does not constitute
> harm, it would probably reduce the kidnapping offense to a second-degree felony
> on its own motion. Appellant then reiterated that he wished to plead guilty and
> that he understood all of the proceedings and ramifications.

> * * *

> [At sentencing, t]he trial court and the parties then discussed whether the
> kidnapping offense was a first- or second-degree felony, and the court found that
> the phrase "safe place unharmed" related to physical harm and not psychological
> harm. However, the court found that the guilty plea had been to a first-degree
> felony and that the "safe place unharmed" affirmative defense, which would have
> reduced the offense to a second-degree felony, was waived by the plea. . . .

> The trial court then indicated that it would proceed with sentencing. At that point,
> appellant's counsel moved to withdraw appellant's guilty plea, asserting that he
> had been ineffective in his representation of appellant, although counsel admitted
> he would not be seeking withdrawal of the plea if the legal rulings would have
> been in appellant's favor. The trial court denied the motion, finding that appellant
> should have sought to withdraw his plea before the legal rulings, and there was no
> basis to withdraw a plea based upon a legal determination.

*Id.* at *1–2 (paragraph notations omitted). The trial court sentenced petitioner to an aggregate term of nineteen years in prison. *Id.* at *2.

Petitioner appealed his conviction to the Ohio Court of Appeals, claiming that his "guilty plea was not given knowingly, voluntarily, and intelligently, in that trial counsel rendered ineffective assistance of counsel in violation of appellant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution . . . ." *Id.* The state court of appeals rejected this claim and affirmed his convictions. *Id.* at *3–4. The Ohio Supreme Court denied Jones' motion for a delayed appeal. *State v. Jones*, 965 N.E.2d 310 (Ohio 2012) (table). Jones also filed a motion to reopen his appeal, which the Ohio Court of Appeals denied, *State v. Jones*, No. 09AP-700 (Ohio Ct. App. Aug. 9, 2012), and the Ohio Supreme Court declined to hear his appeal, *State v. Jones*, 978 N.E.2d 911 (Ohio 2012).

Jones then filed a petition for a writ of habeas corpus in federal district court, asserting six grounds for relief, one of which is relevant to this appeal: whether trial counsel's ineffective assistance resulted in an invalid guilty plea. The warden filed a motion to dismiss the petition on statute of limitations grounds. After holding an evidentiary hearing on the circumstances of petitioner's untimeliness, the magistrate judge issued a report recommending that petitioner be entitled to equitable tolling because petitioner's appellate counsel failed to inform him of the Ohio Court of Appeals decision affirming his convictions. The district court adopted the recommendation over respondent's objections.

Respondent then filed an answer, arguing that petitioner's ineffective assistance of counsel claim was procedurally defaulted and, alternatively, failed on the merits. Specifically, respondent contended that petitioner failed to fully exhaust his state court remedies because he did not file a timely appeal in the Ohio Supreme Court. Respondent further argued that

petitioner could not invoke ineffective assistance of appellate counsel as cause for his failure because he did not exhaust that claim in state court as well. The magistrate judge agreed with respondent that petitioner failed to "present [his claim] to the Ohio Supreme Court in a timely fashion," but concluded that petitioner "arguabl[y]" exhausted his ineffective assistance of appellate counsel claim by raising it in his motion for delayed appeal in the Ohio Supreme Court. Noting the "substantial uncertainties" surrounding the exhaustion issue, the magistrate judge elected to address the merits of petitioner's claims.

Regarding the merits, the magistrate judge agreed with respondent and recommended that the petition be dismissed for failure to demonstrate that the state court's adjudication was an unreasonable application of Supreme Court case law or based on an unreasonable determination of the facts. The district court adopted the magistrate judge's recommendation and dismissed the petition. The district court granted petitioner's request for a certificate of appealability, limited to the issue "[w]hether counsel provided ineffective representation which resulted in an involuntary and unknowing plea[.]" This court denied petitioner's motion to expand the certificate. *Jones v. Warden, Lebanon Corr. Inst.*, No. 14-4043 (6th Cir. May 1, 2015).[1]

II.

*Standard of Review*. "We review the district court's habeas decision de novo." *Lowe v. Swanson*, 663 F.3d 258, 260 (6th Cir. 2011). We look to the decision of "the last state court to issue a reasoned opinion on the issue" raised in a habeas petition. *Loza v. Mitchell*, 766 F.3d 466, 473 (6th Cir. 2014), *cert. denied sub nom. Loza v. Jenkins*, 135 S. Ct. 2892 (2015)

---

[1]Petitioner's brief on appeal includes a perfunctory claim that his conviction violates his right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This issue is outside the scope of the certificate of appealability and is therefore not properly before us. *White v. Mitchell*, 431 F.3d 517, 536 (6th Cir. 2005).

(alteration omitted). In this case, that court is the Ohio Court of Appeals, which addressed and rejected the claim presented here on the merits. Because the Ohio Supreme Court dismissed Jones' appeal with a one-sentence order, we presume that its decision rested on the same grounds. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

*Procedural Bars*. Respondent contends that petitioner's claim is barred by the statute of limitations and the requirement that he exhaust all his federal claims in state court. *See* 28 U.S.C. §§ 2244(d)(1), 2254(b)(1). This court is not required to address either issue before reaching and rejecting the petitioner's appeal on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008), *as amended* (July 7, 2008) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.") (internal quotation marks omitted); *see also Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (stating that "[§ 2244(d)]'s one-year statute of limitations is not jurisdictional"). This is especially so when the issues are complicated and unnecessary to the disposition of the case. *Mahdi*, 522 F.3d at 635; *see also Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). This case presents just such an occasion, *see* ID 741–41 (noting the "substantial uncertainties" surrounding petitioner's ineffective assistance of appellate counsel issue). Therefore, we proceed to the merits of petitioner's claim.

*The Merits*. A federal court's authority to issue a writ of habeas corpus with respect to a state prisoner is governed by 28 U.S.C. § 2254. That statute prevents a federal court from

granting habeas corpus relief based on any claim "adjudicated on the merits" in state court, subject to the exceptions in § 2254(d)(1) and (2). Relevant here is § 2254(d)(1)'s exception for claims adjudicated in state court that "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States[.]" *Id.* § 2254(d)(1); *see also Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003) (stating that we apply the "unreasonable application" prong of § 2254(d)(1) to ineffective assistance of counsel claims).

Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alteration omitted). "In order for a federal court to find a state court's application of Supreme Court precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (alteration omitted).

The federal law at issue in this case is the standard first announced in *Strickland v. Washington*, 466 U.S. 668 (1984), for determining whether a criminal defendant received constitutionally ineffective assistance of counsel. Under *Strickland*'s two-prong test, a person challenging his counsel's representation must show (1) deficient performance, *i.e.*, that "counsel's representation fell below an objective standard of reasonableness" and (2) prejudice. *See id.* at 687–88, 691–92. To establish prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of conviction by guilty plea, "the defendant must

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Put differently, a defendant challenging his attorney's conduct during a plea bargaining "must show that his lawyer's deficiency was a decisive factor in his decision to plead guilty." *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (internal quotation marks omitted).

To obtain habeas relief on an ineffective assistance of counsel claim, a petitioner must establish that the state court's decision constitutes an unreasonable application of *both Strickland* prongs. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). As a corollary, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we need not analyze the performance prong. *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004) (alteration omitted) (citing *Strickland*, 466 U.S. at 697). Here, it is unnecessary to address the performance prong because Jones falls short of establishing that the state appellate court's prejudice determination involved an unreasonable application of federal law.

The Ohio Court of Appeals addressed *Strickland*'s prejudice prong as follows:

> Here, we cannot find that the result would have been different had appellant's trial counsel halted the change of plea hearing when a question was raised regarding the first-degree kidnapping count and the RVO specifications. Trial counsel candidly admitted at the change of plea hearing that he was "stuck" with pleading to what he "probably" believed was wrong, but he did not have any other option because he felt he could not take the case to trial. In discussing his weak bargaining power with the state, appellant's counsel stated, "[w]e all know why, because there's another case circling this case." The other case was what was "driving" the present case, counsel stated, and there were "other forces" that put him in a "bind." Appellant also told the court at the hearing that he considered a trial, but it was "not a fight I want to, I want to pick." The difficulty of appellant's situation was also compounded by the state's persistent refusal to voluntarily amend the charges and strike a plea based upon the same issues discussed by the trial court. Appellant's counsel stated at the change of plea hearing "I would love to do a lot of things, but the State of Ohio has said no to

virtually everything." Counsel stated, "I have asked to resolve it. The State of Ohio has blanket said, no, forget it. Here are your choices. Trial, which presents significant problems and exposure for my client in front of twelve people, or plea." The state reiterated at the hearing that it wished to proceed according to the charges in the indictment despite the questions surrounding the kidnapping charge and the RVO specifications. It was clear that appellant's counsel and appellant both agreed that taking these charges to trial was not a viable option. Given these circumstances, we cannot find that the outcome would have been any different even if appellant's counsel would have halted the change of plea hearing. Appellant would likely have entered a guilty plea because of the other pending case. . . .

*Jones*, 2010 WL 866126, at \*4. Petitioner's sole challenge to this application of *Strickland*'s prejudice prong is that the court ignored the Supreme Court's holding in *United States v. Dominguez Benitez*, 542 U.S. 74, 80 (2004), that when reviewing the voluntariness of the plea, "a reviewing court must look to the entire record, not to the plea proceedings alone[.]" Petitioner's argument is unconvincing for several reasons.

First, it was not an unreasonable application of federal law to give more weight to petitioner's contemporaneous expressions of unwillingness to proceed to trial—in the context of the trial court inquiring whether he wished to pursue a trial on the affirmative defense, no less—than a subsequent repudiation made after an adverse ruling and an opportunity to second-guess the decision. *See McGowan v. Burt*, 788 F.3d 510, 517 (6th Cir. 2015), *cert. denied* 2015 WL 5176490 (Nov. 2, 2015) (mem.) ("[C]onsonant with *Strickland*'s cautionary note about a defendant's natural tendency to second-guess his attorney's assistance after an adverse judgment, the state court scrutinized [the petitioner's] asserted misunderstanding in light of what was said at the time he rejected the plea offer without the distorting effects of hindsight.") (internal quotation marks omitted); *see also Hodges v. Colson*, 727 F.3d 517, 539 (6th Cir. 2013) ("A self-serving statement . . . filed as a required part of [the petitioner's] verified petition for post-

conviction relief, cannot establish a reasonable probability that [he] would have pled not guilty but for the advice of counsel, where all objective evidence points unequivocally to the contrary.").

Second, *Dominguez Benitez* is of little help to petitioner because a holistic review of the record in this case shows that the Ohio Court of Appeals reasonably concluded that petitioner failed to establish a reasonable probability that he would have rejected the plea and proceeded to trial. In addition to trial counsel's statements on the record regarding petitioner's aversion to trial (documented by Ohio Court of Appeals above), petitioner made the following statements on the subject:

> THE COURT: Now, by pleading guilty you are waiving, you are giving up all of those very, very important rights. In effect what you are saying is, Judge, I do not want a trial. I do not want to contest these . . . charges. I don't want to force [the prosecutor] to prove me guilty because I'm willing to admit my guilt. Is that what you want to do?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You've got to be sure.
>
> THE DEFENDANT: I've thought about it, it's not a fight I want to, I want to pick.
>
> * * *
>
> THE COURT: Very good. All right. Is it your desire to enter a plea of guilty today, give up all your rights, including your right to have a jury trial on these issues?
>
> THE DEFENDANT: Yes, sir. I thought about having a trial before you, but it's not a fight I want to take.
>
> * * *
>
> THE COURT: Very well. Now, anybody forced you to plead guilty here?
>
> THE DEFENDANT: Really didn't have a choice, Your Honor.
>
> THE COURT: Oh, you always have a choice.

THE DEFENDANT: No, I didn't have a choice. I had–

THE COURT: If you don't have a choice, I'm not taking your plea.

THE DEFENDANT: Let me put it to you this way. I don't want to go to trial, so yes, this is my voluntary action.

Even taking into account the sentencing hearing—which petitioner faults the Ohio Court of Appeals for failing to consider—the only evidence petitioner cites is his counsel's statement that "I talked to [Jones] and, you know, he agreed based on my advice to plead to the indictment." However, the transcript of the plea hearing shows that counsel's advice was to plead guilty to something he "probably believe[d] [was] wrong"—*i.e.*, to plead to first-degree kidnapping despite knowing he could make a case for second-degree kidnapping at trial—because of the extenuating circumstances petitioner faced at that time. Counsel never indicated at the sentencing hearing that Jones pleaded guilty based on a misunderstanding of the "safe place unharmed" concept. Thus, the evidence petitioner cites does not demonstrate a reasonable probability that, but for counsel's erroneous advice *regarding the potential affirmative defense*, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Given petitioner's repeated assurances on the record that he considered going to trial but decided it was "not a fight [he] want[ed] to take," we cannot conclude that the Ohio Court of Appeals' determination that petitioner failed to established prejudice was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Hill*, 792 F.3d at 676.

We affirm.