NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 21 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERTO FIGUEROA, | No. 19-55217 |
| Petitioner-Appellant, | D.C. No. 5:15-cv-01119-SVW-SP |
| v. | |
| CLARK E. DUCART, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted May 3, 2021
Pasadena, California

Before: KLEINFELD, WARDLAW, and GOULD, Circuit Judges.

Roberto Figueroa appeals the district court's denial of his 28 U.S.C. § 2254

habeas corpus petition challenging his conviction for first-degree murder. A jury

convicted Figueroa, then 20 years-old, as an aider and abettor to the murder of an

individual who disrespected an associate of West Side Verdugo, the gang to which

Figueroa was connected. The murder was accomplished by a shooting, and the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

victim was a member of a different gang. The shooter, a member of still another gang, wanted entry to the West Side Verdugo gang and a way of accomplishing that was to murder a person in the presence of a West Side Verdugo member. The shooter used a gun provided by Figueroa, who was present at the time of the shooting.

This appeal concerns Figueroa's unsuccessful attempt to suppress a statement he gave police during an interrogation. One day after the shooting, Figueroa was interviewed by two detectives for seven-and-a-half hours, ending at 3:12 am. Figueroa contends that his statements were admitted in violation of his *Miranda* rights, or else the waiver of his *Miranda* rights was involuntary. The California Court of Appeal's decision—the last-reasoned decision for purposes of habeas corpus review, *see Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991)—held that: (1) Figueroa was not in custody at the time he gave the allegedly coerced statements, meaning that *Miranda* did not apply; (2) the waiver of his *Miranda* rights was valid; and (3) his due process rights were not violated through a coerced confession. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

We review a district court's denial of a habeas corpus petition *de novo*. *Rhoades v. Henry*, 598 F.3d 495, 500 (9th Cir. 2010). Because Figueroa's habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act

2

of 1996 ("AEDPA"), Figueroa must show that the state court's adjudication of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law," as established by the Supreme Court, or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

1. Figueroa contends that the state court should have suppressed his statements to the detectives because he was interrogated in violation of his *Miranda* rights. It is clearly established federal law that "a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first" be warned of his rights. *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). The state court determined that Figueroa was not in custody during the interrogation, and therefore *Miranda* did not apply. Whether that ruling was contrary to or an unreasonable application of federal law is a close call, but keeping in mind AEDPA's exacting standards, we affirm.

To determine whether a defendant was in custody, courts ask "first, what were the circumstances surrounding the interrogation; and second, given those

3

circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The state court analyzed thirteen factors in making this inquiry, including, among others, whether the police initiated the contact; whether officers told the person that he was free to terminate the interview or whether the person's conduct indicated an awareness of such freedom; and whether there were restrictions on the person's freedom of movement during the interview. Such factors are analogous to those discussed in controlling Supreme Court cases. *E.g.*, *Howes v. Fields*, 565 U.S. 499, 509 (2012).

The state court concluded that a reasonable person in Figueroa's situation would feel free to leave because the detectives "repeatedly reminded" him that the door was unlocked and invited him to "freely leave the room to use the restroom." The state court acknowledged that the lengthy duration of the interview (almost eight hours), the location of the interview (the police stationhouse), and the fact that the detectives confronted Figueroa with evidence against him weighed toward a finding of custody, but in view of the totality of the circumstances, the court concluded he was not in custody.

Figueroa contends that the state court's decision on custody was unreasonable because it did not address the fact that Figueroa was told he failed a polygraph test. According to Figueroa, a reasonable person would not feel free to

4

terminate an interview once the suspect knows that the police believe he has lied. Though the post-polygraph interview was significantly more accusatory, the detectives again reminded Figueroa that the door was unlocked. Figueroa was also told during the post-polygraph section of the interrogation that he could leave the interrogation room to go to the restroom. *See Dyer v. Hornbeck*, 706 F.3d 1134, 1140–41 (9th Cir. 2013). Even if we could have or would have weighed these custody factors differently on direct appeal, we are not permitted to reweigh the evidence before the state court on federal habeas corpus review. *See Richter*, 562 U.S. at 101 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." (citation omitted)); *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). We conclude that "fairminded jurists could disagree" as to whether Figueroa was in custody. *Yarborough*, 541 U.S. at 664. We thus hold that the state court's custody determination was not objectively unreasonable.[1]

2. Figueroa also contends that even if he was not in custody until he was read *Miranda* warnings, his subsequent waiver of those rights was involuntary, or his statements throughout that interrogation were coerced in violation of his due

---

[1] Because we conclude that the state court's custody determination was not unreasonable under AEDPA, we do not address whether any error would be harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

process rights. Neither contention is persuasive. A valid waiver of *Miranda* rights must be knowing, intelligent, and voluntary. *See Miranda*, 384 U.S. at 475. In determining voluntariness, we ask "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citation omitted). Here, the state court recognized Figueroa's age, the fact that he had not taken his prescribed medication, and his recent hospitalization. The court still found his actions and statements voluntary given Figueroa's experience with the police from his previous arrests, his apparent relaxed demeanor, and his statements that he had lied to the police about a previous crime. *See Yarborough*, 541 U.S. at 668. Because we conclude that the state court's determination on voluntariness is not objectively unreasonable under AEDPA, we affirm the district court's denial of habeas relief.

**AFFIRMED.**